**No. 45802.**—Protests 834263–G, etc., of M. A. Katz & Co. (San Francisco).

BROWN, Judge: This suit against the United States was brought at San Francisco, Calif., to recover customs duties claimed to have been illegally exacted on certain rugs imported from India.

The collector of customs took duty at 30 percent ad valorem under paragraph 1117 (c), Tariff Act of 1930, reading as follows:

PAR. 1117. (a) Axminster carpets, rugs, and mats, not specially provided for; Wilton carpets, rugs, and mats; Brussels carpets, rugs, and mats; velvet or tapestry carpets, rugs, and mats; and carpets, rugs, and mats of like character

or description; all the foregoing, valued at not more than 40 cents per square foot, 40 per centum ad valorem; valued at more than 40 cents per square foot, 60 per centum ad valorem.

(b) Ingrain carpets, mats, and rugs or art squares, of whatever material composed, and carpets, rugs, and mats, of like character or description, not specially provided for, 25 per centum ad valorem.

(c) All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for, valued at more than 40 cents per square foot, 30 per centum ad valorem; valued at more than 40 cents per square foot, 60 per centum ad valorem.

(d) Parts of any of the foregoing shall be dutiable at the rate provided for the completed article.

The plaintiffs claim that the mechandise is properly dutiable under subsection (b) of the same paragraph at 25 percent ad valorem, quoted above, and asks for a judgment for the amount of difference between those two rates as applied to the appraised value of the merchandise covered by the six protests No. 834263–G, 834264–G, 834265–G, 834266–G, 834267–G, and 834268–G, consolidated on motion at the trial in Los Angeles.

It is not disputed that the articles in question are valued at not more than 40 cents per square foot as asserted by the collector in his decision.

M. A. Katz of the plaintiff company testified that he had bought the merchandise involved and was familiar with it, produced a representative sample which was marked in evidence as exhibit 1.

He further testified that he went to Madras, India, regularly to arrange for new designs and to arrange the output for the coming year and was familiar with the way the articles were manufactured having imported large quantities.

It further appears that the maker has a hand loom, and when he decides upon the size of the rug which is to be made the loom is stretched on a white warp. Then the design is painted in the different colors that are to appear on the cotton warp. Then the maker starts with a border of brown on the basic cotton warp. Then over this loom they have different spools of yarn in various colors, one is brown, one is orange, and as the maker comes to the part where he has to use a green color he puts on a green spool. When he gets through with the design he goes on with the natural brown.

The yarn of various colors which appear in this article is colored before it is woven into the article.

That the colorings which appear in exhibit 1 are right through the article the same at both ends.

The color of the design which appears in exhibit 1 is the same at both ends from the back to the front.

The witness further stated that it is not a printed or painted rug. No color is added at any time after the weaving of the rug itself.

This witness had been buying large quantities of Belgian, Oriental, French, and Italian rugs for 28 years and was familiar with the term "Ingrain."

This term he defined as a rug that is woven through both sides alike—reversible—with the same design. In his opinion exhibit 1 was an ingrain rug. When asked what he called the rug as he had described it the witness replied "We call them druggets" and that "the trade name is a drugget" and when further asked "Is it called anything else except a drugget?" he replied "I don't know."

John Edward Connell, called as a witness in behalf of the plaintiffs, testified that he was an examiner of merchandise and was familiar with the merchandise here involved and knew the materials of which it was constructed. When asked—

Q. Of what is it constructed?

he replied—

A. The base is made of a webbing of fabric, cotton warp and weft, and the filling of camel or goat hair, a combination of both. It was returned as a wool drugget.

Witness stated that he found it in chief value of wool and that these articles were used as floor coverings and known as druggets.

He further stated that a mat or rug was a small floor covering and that the article here was a mat or rug.

An examination of the sample (exhibit 1) reveals that, as a layman, the writer would describe it as a small floor rug, rather thick and having a hard harsh feel, double-faced both exactly alike. The rug is for the most part a dull greyish brown with a darker brown border all around with a number of designs worked in orange, green, and brown appearing on both sides of the rug in exactly the same relative positions, both as to design and color, that is the colors do not alternate on the two sides of the rug.

The construction of the rug seems to conform to the testimony of the witness Connell in that the colored face yarns on both sides are woven onto a webbing fabric, and in some places at least, being woven right through the webbing as testified by the witness Katz, this last accounting for the colors appearing in the same positions in the designs on both sides of the rug instead of alternating. These colored yarns interwoven with the cotton webbing entirely cover the webbing on both sides of the rug except for a narrow strip at one end of the rug just inside of the fringing.

Is an article such as the sample (exhibit 1) more narrowly covered by paragraph 1117 (b) as claimed by the importer or by 1117 (c) as claimed by the Government?

The competing sections read as follows:

PAR. 1117 (b) Ingrain carpets, ·mats, and rugs or art squares, of whatever material composed, and carpets, rugs, and mats, of like character or description, not specially provided for, 25 per centum ad valorem.

PAR. 1117 (c) All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for, valued at not more than 40 cents per square foot, 30 per centum ad valorem; valued at more than 40 cents per square foot, 60 per centum ad valorem.

For definitions of trade terms used in the above sections we have consulted the Dictionary of Textiles by Louis Harmuth, 1920 edition, published by Fairchild Publishing Co. of New York. We find the following definitions:

Carpet—Thick and strong floor covering, reversible or otherwise woven, knitted or felted, made of wool, cotton, hemp, etc. It is made in widths which can be sewed together to cover the entire floor.

Mat—No applicable definition, but reference is made to mat weave which is again referred to basket weave which is described as made by crossing two or more warps and fillings each time.

Rug—Thick and heavy floor covering made of cotton, wool, silk or jute, made with or without any pile, by hand or on the loom.    *    *    *

Drugget—2. Printed and felted woolen fabric; used for floor covering.

Ingrain—1. Fabrics dyed in the fiber or the yarn;
    2. In the United States name for Kidderminster carpets.

Kidderminster Carpet—1. Originally a coarse double-faced fabric of worsted yarn and woolen filling; 2. A tripple carpet cloth with two faces, the figures alternating on both sides, made without pile; called also Scotch carpet and Kilmarnock and ingrain in the United States.

From the above definitions it seems obvious that exhibit 1 is not a drugget as it is neither a printed nor felted fabric though used as a floor covering.

Furthermore, exhibit 1 conforms to the definition of "rug" in that it is a heavy floor covering made of cotton and wool; and conforms to the general definition of "ingrain" in that it is a fabric dyed in the fiber or the yarn.

Exhibit 1 also closely approximates the definition of the special use of the term "ingrain" in the United States in that it is a triple carpet cloth with two faces, made without pile, deviating from the definition only insofar as the figures do not alternate on both sides, this being due as we see it to the fact that the third cloth is already a woven webbing which enables the face yarns to be woven

through and·through the webbing directly, thus producing identic figures on both sides in respect to design, color, and position.

It would appear, therefore, that it is abundantly shown by the record that if Exhibit 1 is not strictly an ingrain rug it is a rug of like character or description as provided in the second clause of paragraph 1117 (b) and we so hold, thereby sustaining to that extent the claim in the protests for classification under said subsection at the rate of 25 percent ad valorem, of the contested items, as per schedule of protests annexed hereto and hereby made a part of this decision.

Judgment will issue accordingly.