(C. D. 1102)

M. A. KATZ & Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 30, 1948)

*Lawrence, Tuttle & Harper* (*Frank L. Lawrence* and *Walter I. Carpeneti* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: *M. A. Katz & Co.* v *United States*, 6 Cust. Ct. 626, Abstract 45802, the record in which case was admitted in evidence herein, held certain floor coverings to be classifiable under paragraph 1117 (b) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1117 (b)), which provides for "Ingrain carpets, mats, and rugs or art squares, of whatever material composed, and carpets, rugs, and mats, of like character or description, not specially provided for, 25 per centum ad valorem." The conclusion sustained the importer's claim, and reversed the collector's classification under the provision in paragraph 1117 (c) of said act (19 U. S. C. § 1001, par. 1117 (c)), for "All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for, valued at not more than 40 cents per square foot, 30 per centum ad valorem."

As pointed out by counsel for plaintiff, the cited case was not followed by customs officials after publication of a directive by the Acting Commissioner of Customs, 77 Treas. Dec. 329, T. D. 50638, stating "that the floor coverings which were the subject of that decision are commercially known as druggets and that sufficient evidence is available to sustain the classification of that kind of floor covering as druggets under paragraph 1117 (c)," with the order that said decision be limited to the merchandise before the court in that case and classification of such merchandise be continued as druggets, under paragraph 1117 (c), *supra*. Hence, the identical issue, presented in the cited case, has come before us here.

The proceedings in the incorporated case consisted of oral testimony of two witnesses and sample of the merchandise, plaintiff's exhibit 1.

That record has been supplemented with additional testimony by the importer, who appeared in the previous case, and also evidence introduced by defendant, consisting of the oral testimony of a customs official and samples of certain floor coverings.

An examination of plaintiff's exhibit 1, representative of the merchandise under consideration, shows it to be a floor covering, approximately 36 inches long, 26 inches wide, and one-eighth of an inch thick. It is very coarse in texture. The border is dark brown, and designs in light brown, green, and orange have been worked throughout the article over a background of grayish brown. White fringe appears on both ends. The article is reversible, having the same design, in relatively the same position, on both sides. Sewed on one side is a tag, approximately 4 inches square, with printing thereon, reading in part: "HAND MADE—INDIA DRUGGET—MADE IN BRITISH INDIA." Plaintiff's name, the importer, is also printed on the tag.

As this decision will reverse the conclusion reached in the incorporated case, it is appropriate to include herein the reasoning followed therein. We accept the analysis of the testimony introduced in the earlier case set forth in the court's opinion as follows:

M. A. Katz of the plaintiff company testified that he had bought the merchandise involved and was familiar with it, produced a representative sample which was marked in evidence as exhibit 1.

He further testified that he went to Madras, India, regularly to arrange for new designs and to arrange the output for the coming year and was familiar with the way the articles were manufactured having imported large quantities.

It further appears that the maker has a hand loom, and when he decides upon the size of the rug which is to be made the loom is stretched on a white warp. Then the design is painted in the different colors that are to appear on the cotton warp. Then the maker starts with a border of brown on the basic cotton warp. Then over this loom they have different spools of yarn in various colors, one is brown, one is orange, and as the maker comes to the part where he has to use a green color he puts on a green spool. When he gets through with the design he goes on with the natural brown.

The yarn of various colors which appear in this article is colored before it is woven into the article.

That the colorings which appear in exhibit 1 are right through the article the same at both ends.

The color of the design which appears in exhibit 1 is the same at both ends from the back to the front.

The witness further stated that it is not a printed or painted rug. No color is added at any time after the weaving of the rug itself.

This witness had been buying large quantities of Belgian, Oriental, French, and Italian rugs for 28 years and was familiar with the term "Ingrain."

This term he defined as a rug that is woven through both sides alike—reversible—with the same design. In his opinion exhibit 1 was an ingrain rug. When asked what he called the rug as he had described it the witness replied "We call them druggets" and that "the trade name is a drugget" and when further asked "Is it called anything else except a drugget?" he replied, "I don't know."

John Edward Connell, called as a witness in behalf of the plaintiffs, testified that he was an examiner of merchandise and was familiar with the merchandise here involved and knew the materials of which it was constructed. When asked—

Q. Of what is it constructed?

he replied—

A. The base is made of a webbing of fabric, cotton warp and weft, and the filling of camel or goat hair, a combination of both. It was returned as a wool drugget.

Witness stated that he found it in chief value of wool and that these articles were used as floor coverings and known as druggets.

He further stated that a mat or rug was a small floor covering and that the article here was a mat or rug.

It is important to note that the court, in the previous case, drew no conclusions from the foregoing analysis of the testimony. Instead, lengthy quotations from one dictionary were set forth, presumably in anticipation of the language thereof being in complete agreement with the testimony, as outlined. The discussion of definitions appears in the court's opinion in this way:

For definitions of trade terms used in the above sections [paragraph 1117 (b) and (c), *supra*], we have consulted the Dictionary of Textiles by Louis Harmuth, 1920 edition, published by Fairchild Publishing Co. of New York. We find the following definitions:

Carpet—Thick and strong floor covering, reversible or otherwise woven, knitted or felted, made of wool, cotton, hemp, etc. It is made in widths which can be sewed together to cover the entire floor.

Mat—No applicable definition, but reference is made to mat weave which is again referred to basket weave which is described as made by crossing two or more warps and fillings each time.

Rug—Thick and heavy floor covering made of cotton, wool, silk or jute, made with or without any pile, by hand or on the loom. * * *

Drugget—2. Printed and felted woolen fabric; used for floor covering.

Ingrain—1. Fabrics dyed in the fiber or the yarn;

2. In the United States name for Kidderminster carpets.

Kidderminster Carpet—1. Originally a coarse double-faced fabric of worsted yarn and woolen filling; 2. A triple carpet cloth with two faces, the figures alternating on both sides, made without pile; called also Scotch carpet and Kilmarnock and ingrain in the United States.

From the above *definitions* it seems obvious that exhibit 1 is not a drugget as it is neither a printed nor felted fabric though used as a floor covering.

Furthermore, exhibit 1 conforms to the *definition* of "rug" in that it is a heavy floor covering made of cotton and wool; and conforms to the general definition of "ingrain" in that it is a fabric dyed in the fiber or the yarn.

Exhibit 1 also *closely approximates the definition* of the special use of the term "ingrain" in the United States in that it is a triple carpet cloth with two faces, made without pile, *deviating from the definition* only insofar as the figures do not alternate on both sides, this being due as we see it to the fact that the third cloth is already a woven webbing which enables the face yarns to be woven through and through the webbing directly, thus producing identic figures on both sides in respect to design, color, and position. [Italics ours.]

It is fair to conclude from the foregoing that the decision in the incorporated case was controlled almost entirely by the definitions in

the said Harmuth Dictionary of Textiles. The definition therein of "drugget" is attacked by Government counsel, in their brief filed herein, as an "obsolete definition." To support such characterization, reference is made to the Summary of Tariff Information (1929) on the Tariff Act of 1922 under the caption "Schedule 11.—Wool and Manufactures of" at page 1735, where the following appears:

(4) "All other floor coverings, including mats and druggets, not specially provided for, composed wholly or in chief value of wool," is a basket clause that covers a number of miscellaneous floor coverings. Mats are small rugs less than 4½ by 2½ feet. * * * The term "druggets" was formerly used to mean coarse woolen cloths, felted or woven, used for floor coverings; the term now usually signifies a lighter woven cloth that is used to cover carpets in summer time or as a substitute therefor. * * *

There can be no dispute that the foregoing excerpt from the said official publication refers to what is now paragraph 1117 (c) of the Tariff Act of 1930 (19 U. S. C. §1001, par. 1117 (c)), under which the present merchandise was classified.

The description of "drugget" set forth in the cited opinion, as taken from the Harmuth Dictionary of Textiles, gives to the term a narrow and far less comprehensive meaning than that presented through the Summary of Tariff Information, hereinabove cited, which we prefer to follow for the purposes of this case.

In discarding the quoted language from the Harmuth Dictionary, *supra*, we apply definitions from other publications, concededly reliable and applicable in the light of the additional proof which materially changes the factual foundation from that presented to the court in the previous case.

First and foremost in the additional testimony, are statements by plaintiff's witness, Katz, who appeared in the incorporated case. In the present case, he testified that ingrain carpets are composed of multiple cloths, recalling that "the colors did protrude in an ingrain rug. If there was orange and green on the face, there would be green and orange on the other side," a condition that does not exist in defendant's illustrative exhibit 1 (not in evidence in the incorporated case), admittedly a drugget, similar in all material respects to the instant merchandise, and which consists of "eight-ply" by which the witness meant that it has eight strands of yarn, twisted together, as distinguished from eight distinct layers put together. This testimony is contradictory to that offered by the same witness in the incorporated case. His recognition of ingrain floor coverings as consisting of distinct layers of cloth with the colors reversed on opposite sides, is important toward our disposition of the present case, as hereinafter discussed.

Defendant's witness, a customs examiner at the port of entry of the present importation, identified the drugget, defendant's illustra-

tive exhibit 1, as representative of merchandise he had handled in his official capacity for a period of 3 years. His description of the exhibit agreed with plaintiff's testimony along the same line. Defendant's illustrative exhibit 2 (not in evidence in incorporated case) was identified as an ingrain carpet, machine-made, consisting of two layers, each a cloth in itself, and manufactured in such manner as to show the design in opposite colors on opposite sides, as disclosed by the exhibit itself.

Plaintiff's proof, oral testimony as well as representative sample of the merchandise, plaintiff's exhibit 1, is convincing that the articles under consideration are druggets. On the other hand, the evidence relating to ingrain floor coverings not only fails to bring the present merchandise within that particular class, but also shows, by the method of production, that it is not "of like character or description," and consequently very definitely excluded from the provisions of paragraph 1117 (b), *supra*.

Plaintiff's admission that ingrain colors appear in opposite positions on different sides of a rug or carpet emphasizes a characteristic that materially distinguishes ingrain floor coverings from other types. The difference appears in the exhibits admitted in evidence. The druggets, plaintiff's exhibit 1 and defendant's illustrative exhibit 1, display the designs in the same position on both sides. That the colors are in opposite positions on the two sides of the ingrain carpet, defendant's illustrative exhibit 2, is due to the particular method of manufacture, described in the New International Encyclopaedia, second edition, volume IV, under the heading "Carpets and Rugs," as follows (p. 584):

\* \* \* Ingrains have cotton string warps that are entirely concealed by the two or three sets of heavy worsted weft threads in pairs. When there are two wefts, the red one appears on the face where the green one shows on the back. When there are three, one is always buried.

Webster's New International Dictionary, second edition, points to the same distinction in this way:

ingrain carpet. A kind of carpet made of wool dyed in the grain, or before manufacture. It is reversible, a similar design, but with the *colors reversed*, appearing on each side. It is called double, or two-ply, and triple, or three-ply, according to the number of webs in the fabric. [Italics ours.]

Plaintiff has failed to establish its claim under paragraph 1117 (b), *supra*. The evidence, on the contrary, supports the classification of the merchandise as druggets, under paragraph 1117 (c), as assessed by the collector. The protests are therefore overruled and judgment will be rendered accordingly.